# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | | |
|---|---|---|
| James Alston, Carnell Bullock, | ) | |
| Mark Hilton, Zachary Jenkins, James Kile, | ) | Civil Action No.: 3:14-cv-04093-JMC |
| Rhett Linley, John McPherson, | ) | |
| Jeffrey Naves, Joseph Robinson, | ) | |
| Carl Simon, Khehadi Watkins, | ) | |
| Corey Gleaton, Nolan Pegues, and | ) | |
| Alan Ryman, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| DIRECTV, Inc., DIRECTV, LLC, and | ) | |
| MasTec North America, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Defendants DIRECTV, Inc., DIRECTV, LLC (together, "DirecTV") and MasTec North America, Inc. ("MasTec") (collectively, "Defendants")[1] have filed 14 motions seeking summary judgment on claims arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, asserted by Plaintiffs James Alston, Carnell Bullock, Mark Hilton, Zachary Jenkins, James Kile, Rhett Linley, John McPherson, Jeffrey Naves, Joseph Robinson, Carl Simon, Khehadi Watkins, Corey Gleaton, Nolan Pegues, and Alan Ryman (together, "Plaintiffs"). (*See* ECF Nos. 87 to 100.) A hearing on the motions has been scheduled. (*See* ECF No. 139.) In order to streamline the upcoming hearing and to ensure an expeditious disposition of the summary judgment motions, this order addresses a number of arguments raised by the parties for which the court believes argument at a hearing would not be beneficial. Accordingly, in this order, the court **DENIES IN PART**

---

[1] The court notes Defendants' statement that DIRECTV, Inc. merged into DIRECTV, LLC, on January 1, 2012, and that, as a result, the only DirecTV entity that remains in existence is DIRECTV, LLC. (*See, e.g.*, ECF No. 87-1 at 1 n.1.)

Defendants' motions for summary judgment and reserves decision on the remaining aspects of the motions until after the hearing.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2014, Plaintiffs filed their complaint in this matter, alleging that they are all technicians who worked installing and repairing satellite television service systems offered to consumers by DirecTV. (*See* ECF No. 1 at 2, 5.) Plaintiffs allege that DirecTV oversees a "provider network" of corporate entities called Home Service Providers ("HSPs") that provide DirecTV with its workforce of technicians. (*See id.* at 5.) Ostensibly, HSPs, such as MasTech, either employ technicians directly or engage technicians as independent contractors, and an HSP might also subcontract with another HSP to provide DirecTV with technicians who are designated as employees or independent contractors of the subcontracted HSP. (*See id.* at 5-6.) Plaintiffs allege that the HSP provider network was designed to allow DirecTV to exercise the right of control over technicians while avoiding its obligation to comply with the requirements that the FLSA imposes on employers. (*See id.* at 6-8.) Plaintiffs claim that, despite Defendants' designation of their employment status, Plaintiffs were jointly employed by DirecTV and by the HSPs that engaged them for purposes of the FLSA. (*See id.* at 8-10.)

Plaintiffs also claim that the net effect of Defendants' policies and practices was to willfully fail to pay minimum wage and overtime compensation due to Plaintiffs, and to avoid keeping accurate time records in order to save on payroll costs. (*See id.* at 10.) They allege that DirecTV used a computer program called SIEBEL to coordinate and assign to technicians particular work orders for installing or repairing DirecTV systems and that DirecTV used a per-task (piece-rate) payment scheme to compensate technicians for completing work orders. (*See id.* at 7.) Although the system accounted for some of the time during which technicians completed work orders,

Plaintiffs allege that it failed to account for all of that time and that technicians were not compensated for the time needed to perform other necessary work, such as

> assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting [DirecTV] to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

(*Id.* at 11.) Plaintiffs also allege that the provider network resulted in many technicians being misclassified as independent contractors and that, due to this misclassification, technicians were required to purchase at their own expense the supplies necessary to perform the work and that "chargebacks" were deducted from their pay. (*See id.* at 12.) As a result of Defendants' failure to compensate technicians for working all the time necessary to perform their work and Defendants' failure to reimburse technicians for chargebacks and expenses necessarily incurred to perform their work, Plaintiffs allege that they were paid below the minimum wage and overtime wage rates, in violation of the FLSA. (*See id.* at 10-12.) Plaintiffs seek damages for unpaid minimum wages, unpaid overtime wages, and liquidated damages, pursuant to 29 U.S.C. § 216(b), and damages from unpaid wages and compensation resulting from their misclassification as independent contractors. (*See id.* at 24-27.)

After discovery was completed (*see* ECF No. 66 at 1), Defendants filed the instant motions for summary judgment (*see* ECF Nos. 87 to 100). Although Defendants raise several grounds for summary judgment, each motion is specifically tailored to each of the 14 remaining Plaintiffs, such that not all of the grounds raised are applicable to each Plaintiff. (*See* ECF No. 131 at 52 (appendix).) Defendants assert that they are entitled to summary judgment on all or some of the claims asserted by all or some of the remaining Plaintiffs because there is no genuine dispute that

(1) certain Plaintiffs were properly classified as independent contractors and were not jointly employed by Defendants; (2) Defendants lacked the requisite knowledge of the hours Plaintiffs worked; (3) certain Plaintiffs are subject to the retail or service establishment exemption for overtime wages under 29 U.S.C. § 207(i); (4) certain Plaintiffs were paid at least the minimum wage; (5) certain Plaintiffs are unable to make the requisite showing of damages; (6) certain Plaintiffs' claims are barred by two year statute of limitations in 29 U.S.C. § 255(a); and (7) certain Plaintiffs were properly paid overtime wages during their employment with MasTec. (*See* ECF Nos. 87-1, 88-1, 89-1, 90-1, 91-1, 92-1, 93-1, 94-1, 95-1, 96-1, 97-1, 98-1, 99-1, 100-1; *see also* ECF No. 131 at 52.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The parties seeking summary judgment shoulder the initial burden of demonstrating to the court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movants have made this threshold demonstration, the non-moving parties, to survive the motion for summary judgment, may not rest on the allegations averred in their

pleadings. Rather, the non-moving parties must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324.

## III. ANALYSIS

The court addresses Defendants' grounds for summary judgment below. As indicated by the truncated recitation of the facts above, the court discusses the relevant evidence to which the parties point in each of the below subparts as needed.

### A. Joint employment and designation of Plaintiffs' employment status

As Defendants correctly point out, for a defendant to be liable under the FLSA provisions at issue here, a plaintiff must prove that he was the defendant's employee, as that term is used for purposes of the FLSA. *See Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 133 (4th Cir. 2017) (citing 29 U.S.C §§ 203(e)(1), 206(a), 207(a)(1)). Under the FLSA, an individual may be jointly employed by more than one entity at the same time, with all joint employers being jointly responsible for compliance with the FLSA. *See id.* at 133-35. Under their theory of liability, Plaintiffs appear to argue that each Plaintiff was jointly employed by DirecTV and MasTec (*see* ECF No. 125 at 71-88), even though Plaintiffs Bullock and Ryman assert claims against DirecTV only, and not against MasTec (*see* ECF No. 1 ¶¶ 84, 147).

In their first ground for summary judgment, Defendants have asserted in their motions that Plaintiffs fail to adduce evidence sufficient to raise a genuine dispute that DirecTV and MasTec did not jointly employ Plaintiffs Alston, Hilton, Jenkins, Kile, Linley, McPherson, Naves, Robinson, Simon, and Watkins (*see* ECF No. 87-1 at 10-21; ECF No. 90-1 at 8-20; ECF No. 91-1 at 9-20; ECF No. 92-1 at 9-21; ECF No. 93-1 at 9-21; ECF No. 94-1 at 10-22; ECF No. 96-1 at 9-20; ECF No. 98-1 at 11-23; ECF No. 99-1 at 10-22; ECF No. 100-1 at 12-25) or that DirecTV was not a joint employer of Plaintiffs Bullock, Gleaton, Pegues, and Ryman (*see* ECF No. 88-1 at 8-

20; ECF No. 89-1 at 10-19; ECF No. 95-1 at 9-18; ECF No. 97-1 at 9-20). Defendants argue that the larger group of Plaintiffs have failed to adduce sufficient evidence that DirecTV and MasTec were their joint employers under the four-factor test set forth in *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), or the six-factor test set forth in *Ling Nan Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61 (2d Cir. 2003), (*see, e.g.*, *id.* at 14-21) and that the smaller group failed to adduce sufficient evidence that DirecTV was their joint employer under either the *Bonnette* or *Zheng* tests (*see, e.g.*, ECF No. 88-1 at 13-20).With respect to all Plaintiffs except Gleaton, Pegues, and Robinson, Defendants also argue that each of them were independent contractors of an HSP subcontracted by MasTec to provide technicians for DirecTV and that, because they were independent contractors of a third party, they, as a matter of law, could not be employees of MasTec and DirecTV. (*See, e.g.*, ECF No. 87-1 at 10 (citing *Roslov v. DirecTV, Inc.*, ___ F. Supp. 3d ___, No. 4:14-cv-00616 BSM, 2016 WL 6892110 (E.D. Ark. Nov. 4, 2016)).)

After Defendants filed their motions for summary judgment, the Fourth Circuit issued, on the same day, its opinions in *Salinas* and in *Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017). In *Salinas*, the Fourth Circuit reaffirmed its decision in *Schultz v. Capital International Securities, Inc.*, 466 F.3d 298 (4th Cir. 2006), which

> established a two-step framework for analyzing FLSA joint employment claims, under which courts must first determine whether two entities should be treated as joint employers and then analyze whether the worker constitutes an employee or independent contractor of the combined entity, if they are joint employers, or each entity, if they are separate employers

*Salinas*, 848 F.3d at 139-40 (citing *Schultz*, 466 F.3d at 305-07). Regarding the first step of this two-step framework, the court noted that district courts in this circuit had applied the *Bonnette* and *Zheng* tests to determine whether two entities should be treated as joint employers. *See id.* at 136. However, after a thorough review of the issue, the *Salinas* court expressly admonished the district

courts to "no longer employ *Bonnette* or tests derived from *Bonnette* in the FLSA joint employment context," *id.* at 140; *see also id.* at 137 ("[C]ourts should not rely on the *Bonnette* factors in determining whether a worker constitutes *an employee or independent contractor* for purposes of the FLSA and analogous labor statutes."), an admonition that appears to prohibit employing *Zheng* for the same purpose, *see id.* at 136 (viewing the *Zheng* test as a "liberalized" version of the *Bonnette* test). After expressly prohibiting the use of *Bonnette* and similar tests, the *Salinas* court set forth its own list of six non-exhaustive factors a court should consider in determining whether two entities should be treated as joint employers for FLSA purposes. *See id.* at 141-42. Regarding the second step of the two-step framework, the *Salinas* court reaffirmed *Schultz*'s six-factor test, derived from *Unites States v. Silk*, 331 U.S. 704 (1947), *abrogated in part on other grounds by Nationwide Mut. Ins. Co. v.* Darden, 503 U.S. 318 (1992), in determining whether a worker constitutes an employee or independent contractor of the joint or separate employers. *See Salinas*, 848 F.3d at 137 n.7, 150.

In *Hall*, the Fourth Circuit addressed, among other things, a district court's decision to first determine whether a plaintiff was an employee before determining whether the defendants were joint employers under the FLSA. *See* 846 F.3d at 766-67. Despite the express language in *Schultz* "recogniz[ing] that in certain cases it may be necessary to first determine whether a party is an 'employer' for FLSA purposes before determining whether a joint employment arrangement exists," 466 F.3d at 306 n.1, the *Hall* court nonetheless castigated the district court for "invert[ing] the two-step inquiry [the Fourth Circuit] ha[d] adopted in FLSA joint employment cases," 846 F.3d at 767; *see also id.* at 769 (explaining that "the district court's inversion of the two-step *Schultz* framework alone would warrant reversal" and again castigating the district court for "compound[ing] its error by relying on *Bonnette*"). The Fourth Circuit concluded that courts "first

must determine whether the defendant and one or more additional entities" were joint employers before proceeding to "the second step of the analysis—which asks whether a worker was an employee or independent contractor for purposes of the FLSA." *Hall*, 846 F.3d at 767. It reasoned that the outcome of the second step "depends in large part upon the answer to the first step," because the key inquiry is "whether the two entities' *combined* influence over the terms and conditions of the worker's employment render the worker an employee as opposed to an independent contractor." *Id.* Thus, "[f]ocusing first on the relationship between putative joint employers is essential to accomplishing the FLSA's . . . purpose." *Id.*

Here, as Plaintiffs assert (*see* ECF No. 125 at 71-88) and as Defendants acknowledge (*see* ECF No. 131 at 5-27) to some extent, the assessment of Plaintiffs' joint employer theory of liability under the FLSA must proceed under the two-step analysis reaffirmed in *Salinas*, and, in addressing the first step, the court must apply the non-exhaustive six-factor test set forth in *Salinas* and may not apply the tests set forth in *Bonnette* or *Zheng*. Accordingly, to the extent that Defendants argue that they are entitled to summary judgment on the ground that they were not joint employers of any Plaintiff under the application of the *Bonnette* and *Zheng* tests, the court **DENIES** their motion in this respect.

Moreover, as the Fourth Circuit explained in *Hall*, the court may not first determine whether a worker is an employee of a putative joint employer before determining whether a joint employer arrangement exists. To do so would violate the principle emphasized by the Fourth Circuit that whether an employment relationship exists in the context of an alleged joint employer arrangement depends on the putative joint employers' combined influence over the terms and conditions of the work to be performed, rather than their separate influence. Accordingly, the court cannot agree with Defendants that, should the court conclude that certain Plaintiffs have failed to

create a genuine dispute that they are not independent contractors of a third-party HSP, then, as a matter of law, Defendants cannot be joint employers of those Plaintiffs. Such an analysis inverses the two-step framework set forth in *Salinas* and *Hall*. Accordingly, to the extent that Defendants argue that they are entitled to summary judgment on the ground that they were not joint employers of certain Plaintiffs because those Plaintiffs were independent contractors of third-party HSPs, the court **DENIES** their motion in this respect.[2]

The court declines, until after the hearing on Defendants' summary judgment motions, to decide whether Plaintiffs have adduced sufficient evidence to create a genuine dispute that Defendants jointly employ any of the Plaintiffs under the two-step framework articulated in *Salinas* and *Hall*.

## B. Knowledge of uncompensated work

To succeed on a 29 U.S.C. § 207(a)(1) claim for uncompensated overtime wages, a plaintiff bears the burden of proving, as an element of the claim, that the employer had actual or constructive knowledge of the plaintiff's uncompensated overtime work. *See Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996); *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 109 (4th Cir. 1988); *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). This court has consistently applied this requirement to FLSA claims for uncompensated overtime wages, *see MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-03088-DCN, 2014 WL 4199140, at *3 (D.S.C. Aug. 20, 2014); *Martin v. Champion Window Co. of Columbia, LLC*, No. 3:09-757-JFA, 2010 WL 412583, at *2 (D.S.C. Jan. 28, 2010), as have other district courts within the Fourth Circuit, *see Brockdorff v.*

---

[2] Defendants cite *Roslov* in support of their argument that, if a plaintiff is an independent contractor of a third party, then, as a matter of law, a defendant cannot be that plaintiff's joint employer. Having reviewed *Roslov*, the court does not believe the case stands for the proposition asserted. In any event, the Fourth Circuit's decision in *Hall* controls here.

*Wells Mgmt. Grp., LLC*, No. 3:15cv137-HEH, 2015 WL 376241, at *4 (E.D. Va. June 15, 2015);

*Butler v. DirectSAT USA, LLC*, 55 F. Supp. 3d 793, 803 (D. Md. 2014); *Porter v. Petroleum

Transp., Inc.*, No. 2:10-cv-01384, 2012 WL 3835075, at *2 (S.D.W. Va. Sept. 4, 2012). Moreover,

the knowledge element in the § 207(a)(1) uncompensated overtime wages context is premised on

the FLSA's prerequisite that the plaintiff show that he was "employed" (meaning suffered or

permitted to work, 29 U.S.C. § 203(g)) by the defendant, *see Davis*, 792 F.2d at 1276, a

prerequisite also imposed in a 29 U.S.C. § 206(a)(1) claim for violation of the minimum wage

requirement, *see Sanchez v. Truse Trucking, Inc.*, 74 F. Supp. 3d 716, 721 (M.D.N.C. 2014).

Accordingly, to succeed on a § 206(a)(1) claim for violation of the minimum wage requirement, a

plaintiff must prove that the defendant had actual or constructive knowledge of the plaintiff's work

that forms the basis of his claim. *See Porter*, 2012 WL 2835075, at *2.

Defendants assert that Plaintiffs have failed to adduce sufficient evidence to raise a genuine

dispute that Defendants lacked actual or constructive knowledge of any uncompensated work

performed by Plaintiffs and, therefore, that Defendants are entitled to summary judgment on all of

Plaintiffs' wage-related claims. (*See, e.g.*, ECF No. 87-1 at 22-23 (citing *Hertz v. Woodbury Cnty.*,

566 F.3d 775, 782 (8th Cir. 2009); *Whitaker v. Pac. Enters. Oil Co.*, 956 F.2d 1170, at *1 (10th

Cir. 1992) (unpublished table disposition)).)[3] Defendants first assert Plaintiffs have not

demonstrated actual knowledge of Plaintiffs' work hours because it is undisputed that Defendants

---

[3] With respect to Plaintiffs Bullock, Gleaton, Pegues, and Ryman, Defendants seek summary judgment on this ground only as to these Plaintiffs' claims against DirecTV. (*See* ECF No. 88-1 at 20-21; ECF No. 89-1 at 20-21; ECF No. 95-1 at 18-20; ECF No. 97-1 at 22-23.) With respect to Plaintiff Robinson, Defendants argue that they are entitled to summary judgment only as to a portion of his wage-related claims on this basis. (*See* ECF No. 96-1 at 20-21.) Although not fully explained, Defendants appear to seek summary judgment only as to Robinson's claims against DirecTV, and not as to his claims against MasTec, during the time Robinson worked for MasTec and to seek summary judgment as to his claims against both DirecTV and MasTec during the time Robinson worked for another HSP.

did not monitor or record Plaintiffs' schedules and that they did not pay Plaintiffs and thus had no knowledge of the methods or rates of payment. (*See, e.g.*, *id.* at 22.) Defendants also assert that Plaintiffs have not demonstrated constructive knowledge of Plaintiffs' work hours. (*See, e.g.*, *id.*) Defendants argue that SIEBEL, the program used to issue and track the performance and completion of DirecTV work orders, is not a timekeeping or payroll system and that it would have been futile for Defendants to attempt to track the number of hours Plaintiffs worked using SIEBEL because the amount of hours each work order takes to complete varies. (*See, e.g.*, *id.* at 22-23.)

In response, Plaintiffs advance two arguments. First, Plaintiffs argue essentially that, when an alleged employer disavows the employment relationship and has made no attempt to monitor or record a putative employee's work hours, the requirement that the alleged employer have actual or constructive knowledge of the putative employee's uncompensated work hours should not apply. (*See* ECF No. 125 at 88 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds*, Portal–to–Portal Act, Pub. L. No. 49–52, § 5, 61 Stat. 84, 87 (1947) (codified at 29 U.S.C. § 216(b))).) Second, Plaintiffs argue that they have adduced sufficient evidence regarding SIEBEL to raise a genuine dispute as to whether Defendants had knowledge of Plaintiffs' uncompensated work hours because SIEBEL tracked and reported the time at which technicians arrived at each job site and the expected total time it would take a technician to complete all work orders assigned in a day and because MasTec admitted that technicians rarely worked less than 40 hours per week. (*See id.* at 21-22, 89 (citing ECF No. 125-4 at 90).)

The court rejects Plaintiffs' first argument. The court emphasizes here that the knowledge requirement is derived from the FLSA's prerequisite for liability that the defendant employ the plaintiff and from the FLSA's definition of the term "employ." *See Davis*, 792 F.2d at 1276-77. A

plaintiff must prove that the defendant knew or should have known of the work performed precisely because doing so is integral to proving that the defendant employed plaintiff to do that work for purposes of FLSA liability. *Id.*; *see also Porter*, 2012 WL 2835075, at *2; *Darrikhuma v. Southland Corp.*, 975 F. Supp. 778, 783 (D. Md. 1997). A conclusion that a plaintiff is not required to prove a defendant's actual or constructive knowledge that plaintiff performed the work amounts to a conclusion that the plaintiff need not prove that the defendant suffered or permitted the work to be done, even when (or specifically because) the defendant disputes that it employed the plaintiff. Such a conclusion is untenable because it presumes from the outset that the defendant employed plaintiff and places on defendant the burden to disprove that presumption, a result not contemplated by FLSA jurisprudence and one that, in fact, upends FLSA analysis. *See Pforr*, 851 F.2d at 109 ("[T]his burden is squarely upon the plaintiff; a defendant . . . is not required to show lack of knowledge as an affirmative defense."); *Davis*, 792 F.2d at 1277 ("Nothing . . . in the [FLSA] itself treats the lack of employer knowledge as an affirmative defense to be raised and proved by the employer."). Accordingly, the court cannot accept an argument that is premised on this legal conclusion.

Plaintiffs' reliance on *Mt. Clemens* in this regard is misplaced. As the Fourth Circuit explained when faced with a similar argument regarding the knowledge requirement, *Mt. Clemens*

> was squarely directed at the issue of what evidence an employee must introduce to establish the extent of his overtime work when his employer has kept inadequate records. Employer knowledge was not an issue in that case. Nothing in *Mt. Clemens* . . . treats the lack of employer knowledge as an affirmative defense to be raised and proved by the employer. The [FLSA] requires the plaintiff to prove that he was "employed" by the defendant, and that means proof that the defendant knew or should have known that the plaintiff was working overtime for the employer.

*Davis*, 792 F.2d at 1277 (internal citation omitted); *see also Craig v. Bridges Bros. Trucking, LLC*, 823 F.3d 382, 391-92 (6th Cir. 2016) (warning against "conflat[ing] the issues" by equating *Mt.*

*Clemens*' standard for proving that a plaintiff performed the work with the standard of proving that a defendant had actual or constructive knowledge of the work). Aside from *Mt. Clemens*, which is inapposite, Plaintiffs point to no other authority supporting the proposition that an FLSA plaintiff need not prove the defendant's actual or constructive knowledge of the work when the defendant disputes that it employed the plaintiff and has not attempted to monitor or record the plaintiff's work. Because this proposition otherwise has no support in law, the court rejects it and will not further entertain Plaintiffs' arguments in this vein.

The court declines to address the parties' other argument—concerning whether Plaintiffs have adduced sufficient evidence of Defendants' knowledge—until after the hearing.

## C. Retail or service establishment overtime wages exemption

The FLSA provides an exemption from § 207(a)'s overtime wage requirement for qualifying employers that employ the employee in "a retail or service establishment." 29 U.S.C. § 207(i).[4] Aside from the threshold requirement that the employer employ the employee in a retail or service establishment, exemption from the overtime wages requirement under § 207(i) is applicable only

> if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 . . . , and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

*Id.*

Because the FLSA "is 'remedial and humanitarian in purpose' reflecting an intent by Congress to protect broadly the 'rights of those who toil,'" *Morrison v. Cnty. of Fairfax*, 826 F.3d 758, 761 (4th Cir. 2016) (quoting *Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123*, 321 U.S.

---

[4] This particular exemption is sometimes referred to as the § 7(i) exemption.

590, 597 (1944)), "courts are to construe the FLSA liberally, 'recognizing that broad coverage is essential' to accomplishing the statute's goals," *id.* (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)); *see also Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011) ("[T]he Supreme Court has cautioned that the FLSA 'must not be interpreted or applied in a narrow, grudging manner[.]'" (quoting *Tenn. Coal*, 321 U.S. at 597)). For these reasons, "FLSA exemptions . . . 'are to be narrowly construed against the employers seeking to assert them' and applied only in instances 'plainly and unmistakably with the exemptions' terms and spirit.'" *Morrison*, 826 F.3d at 761 (internal quotation marks omitted) (quoting *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 692 (4th Cir. 2009) ("*Desmond I*")); *see Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960). Thus, although the Fourth Circuit does not appear to have confronted the exemption set forth in § 207(i), in general, employers asserting an exemption bear the burden to "prove the application of the exemption by clear and convincing evidence." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 121 (4th Cir. 2015) (citing *Desmond I*, 564 F.3d at 691 n.3); *see also Schmidt v. Charleston Collision Holdings Corp.*, No. 2:14-cv-01094-PMD, 2015 WL 3767436, at *5 (D.S.C. June 17, 2015) (applying clear and convincing evidence standard to employer's assertion of § 207(i) exemption); *Herrera v. TBC Corp.*, 18 F. Supp. 3d 739, 741-42 (E.D. Va. 2014) (same after noting circuit split).

In the court's estimation, Defendants' argument that there is no genuine dispute that the § 207(i) exemption applies to them fails at the threshold issue of whether they employed Plaintiffs in a retail or service establishment, so the court limits its discussion in this order to this threshold issue.[5] Defendants, asserting the § 207(i) exemption against all Plaintiffs except Gleaton, Naves,

---

[5] To the extent Defendants seek partial summary judgment on the other elements of the exemption, the court declines to address those elements in this order.

and Pegues (*see* ECF No. 87-1 at 24-25; ECF No. 88-1 at 22-24; ECF No. 90-1 at 22-23; ECF No. 91-1 at 23-24; ECF No. 92-1 at 23-24; ECF No. 93-1 at 23-24; ECF No. 94-1 at 24-26; ECF No. 96-1 at 25-26; ECF No. 97-1 at 24-26; ECF No. 98-1 at 26-27; ECF No. 99-1 at 28-30),[6] rely heavily on *Matrai v. DirecTV, LLC*, 168 F. Supp. 3d 1347 (D. Kan. 2016), (*see, e.g.*, ECF No. 87-1 at 24-25). Noting first that § 207(i) does not define the term "retail or service establishment," the *Matrai* court outlined two tests that courts have used in determining whether an employer employs an employee in a retail or service establishment for purposes of § 207(i). *See Matrai*, 168 F. Supp. 3d at 1359-62. The first test relies on the definition of "retail or service establishment" provided in the since-repealed 29 U.S.C. § 213(a)(2) and the case law and Department of Labor regulations emanating therefrom. *See Matrai*, 168 F. Supp. 3d at 1359-60. Under this test, a "retail or service establishment" means an establishment with at least 75% of its annual dollar volume of goods or services being (1) not available for resale and (2) recognized as retail sales or service in the particular industry. *See id.* at 1359 (citing 29 C.F.R. § 779.411); *see also Schultz v. W.R. Hartin & Son, Inc.*, 428 F.2d 186, 187 n.3 (4th Cir. 1970). The second test, developed by the Seventh Circuit in *Alvarado v. Corp. Cleaning Services, Inc.*, 782 F.3d 365 (7th Cir. 2015), defines a "service establishment" (as opposed to a "retail establishment") by reference to the establishment's production's sensitivity to demand: "Demand for services often varies, and when demand drops the seller cannot make up for it, as a maker of goods can do, by producing for inventory rather than for immediate sale," *Alvarado*, 782 F.3d at 369; *see Matrai*, 168 F. Supp. 3d at 1360.

---

[6] With respect to Plaintiff Ryman, Defendants assert the exemption, but seek summary judgment only as to the threshold issue of whether Defendants employed Ryman in a retail or service establishment and the issue of whether Ryman was paid in commission as a sufficient proportion of his income and for a representative period, leaving for trial or for a later summary judgment motion the third issue of whether Ryman's regular rate of pay exceeded one and a half times the minimum wage. (*See* ECF No. 97-1 at 23-27 & n.4.)

In support of their argument that they employed Plaintiffs, if at all, in a retail or service establishment, Defendants point to the declaration of Valerie Kirby, DirecTV's Supervisor of Financial Operations. (*See e.g.*, ECF No. 87-1 at 3; *see also* ECF No. 101-3 at 2.) Kirby, in relevant part, states that "DIRECTV's records reflect that substantially all, and well over 75% of DIRECTV's revenues, come from the sales of goods and services to the end user—meaning more than 75% of DIRECTV's revenues come from the sales of goods and services that are not for resale." (ECF No. 101-3 at 2.) Defendants also point to the declaration of Steven Hill, the Deputy Executive Director of the Satellite Broadcast and Communications Association ("SBCA") who bases his knowledge of the "consumer satellite industry" on his more than 10 years of employment with SBCA and his nearly 10 years of employment with Pegasus Communications. (*See, e.g.*, ECF No. 87-1 at 3; *see* ECF No. 101-2 at 2-3; ECF No. 131 at 33 n.18.) Hill states, in relevant part:

> Sales and services that are generally recognized as "retail" in our industry include . . . the services performed by technicians to fulfill the retail transaction between the Satellite Service and the Consumer by delivering, installing, or servicing the equipment purchased or leased by the customer, and activating or maintaining the customer's connection to the satellite company's satellite television service.

(ECF No. 101-2 at 3.) Aside from these two declarations, Defendants point to no other evidence in support of their argument that they employed Plaintiffs in a retail or service establishment for purposes of the § 207(i) exemption.

Before proceeding to Plaintiffs' response, the court pauses to draw two conclusions from Defendants' arguments. First, the court observes that Defendants present no argument or evidence supporting application of the *Alvarado* test in determining whether Defendants employ Plaintiffs in a retail or service establishment for purposes of § 207(i). In Defendants' memoranda in support of summary judgment, the *Alvarado* test is only mentioned in a block quote lifted from *Matrai*, but Defendants fail to assert that they are unable to continue producing their products (for instance

by producing for inventory) when demand for the product drops. (*See, e.g.*, ECF No. 87-1 at 24-25.) Defendants advance no argument regarding the sensitivity of their production to the changes in demand, and, more importantly, they point to no evidence in the record by which they might satisfy their burden of proving by clear and convincing evidence that they are service establishments under the test announced by *Alvarado*. Instead, the only evidence to which Defendants point in this regard is evidence directed at the other test outlined in *Matrai* that relies on regulatory definitions based on § 213(a)(2). (*See, e.g.*, ECF No. 87-1 at 3; *see* ECF No. 101-2 at 2-3; ECF No. 101-3 at 2; ECF No. 131 at 33 n.18.) The court is under no obligation to sift through the uncited portions of Defendants' voluminous filings submitted in support of summary judgment, and it declines to do so here. *See* Fed. R. Civ. P. 56(c)(1)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *id.* advisory committee's note to 2010 amendment ("[T]he court may decide a motion for summary judgment without undertaking an independent search of the record."). Because Defendants present no argument or evidence on the matter, to the extent they seek summary judgment that they employed Plaintiffs in a retail or service establishment under the test announced in *Alvarado*, their motions are **DENIED** in this respect.

Second, although Defendants present both argument and evidence to support the application of the § 213(a)(2) test, the argument and evidence are directed only to proving that DirecTV employed Plaintiffs in a retail or service establishment. While Defendants' memoranda assert that "more than 75% of DIRECTV's revenue is generated from the sales of goods and services to the end user and is not for resale" and that "[t]he installation of DIRECTV satellite equipment is recognized as retail within DIRECTV's industry" (*see, e.g.*, ECF No. 87-1 at 25; ECF No. 131 at 33-34), Defendants fail to make any mention of the percentage of MasTec's

revenue that is generated from the sales of goods and services that are not for resale, the nature of MasTec's industry, or whether any work performed by Plaintiffs for MasTec is recognized as retail within that industry. Further, the only evidence Defendants present as to the § 213(a)(2) test is expressly addressed to whether DirecTV meets that test and does not appear to have any bearing on whether MasTec meets the test. (*See* ECF No. 101-2 at 2-3; ECF No. 101-3 at 2.) Accordingly, to the extent Defendants seek summary judgment that MasTec employed Plaintiffs in a retail or service establishment, their motions are **DENIED** in this respect.

In response to Defendants' arguments, Plaintiffs first argue that a portion of the evidence on which Defendants rely in support of their argument for application of the § 207(i) exemption should be disregarded pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), (e)(1) and 37(c)(1). (*See* ECF No. 125 at 92 n.268.) Specifically, Plaintiffs assert that Defendants failed to timely identify Steven Hill as an individual likely to have discoverable information and whom Defendants may use to support its defense as required by Rule 26(a)(1)(A)(i) and (e)(1) and that therefore Defendants are not allowed to use Hill to supply evidence in support of their motions for summary judgment pursuant to Rule 37(c)(1). (*See id.*) Defendants did not respond to this argument in their reply brief.

Initial disclosures under Rule 26(a)(1) were due in this matter by July 13, 2015. (ECF No. 40 at 1.) Hill's declaration was executed nearly three months beforehand on May 22, 2015 (*see* ECF No. 101-2 at 3), and DirecTV has relied on it in other cases to support application of the § 207(i) exemption, *see Arnold v. DIRECTV, LLC*, No. 4:10-cv-352 JAR, 2017 WL 1196428, at *7-9 (E.D. Mo. March 31, 2017); *Roeder v. Directv, Inc.*, No. C14-4091-LTS, 2017 WL 151401, at *26-29 (N.D. Iowa Jan. 13, 2017). Although DirecTV relied on the Hill declaration for this purpose at the latest by August 19, 2016, *see Roeder*, 2017 WL 151401, at *2, the only Rule 26(a) disclosure served by DirecTV on record, which was supplemented on September 29, 2016, does

not specifically name Hill as a witness likely to have discoverable information whom DirecTV may use to support its defense (*see* ECF No. 125-58 at 1-7, 10). Instead, the disclosure lists as such witnesses the "witnesses identified under [Fed. R. Civ. P.] 30(b)(6) by [DirecTV] in *Arnold v. DIRECTV, et al.*, Case No. 10-0352-JAR." (ECF No. 125-58 at 4.)

"Unless stipulated by the parties or otherwise ordered by the court, [Rule] 26(a) requires the parties to disclose the identities 'of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses[.]'" *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (ellipsis omitted) (quoting Fed. R. Civ. P. 26(a)). "Under Rule 26(e), a party who has made a Rule 26(a) disclosure or responded to discovery must provide timely supplementation 'if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Id.* (quoting Fed. R. Civ. P. 26(e)). "Furthermore, 'a party must make these disclosures *at the time*[*s*] *and in the sequence* [*that*] *the court orders*.'" *Wilkins v. Montgomery*, 751 F.3d 214, 221 (4th Cir. 2014) (brackets omitted) (quoting Fed. R. Civ. P. 26(a)(2)(D)). "Pursuant to [Rule] 37, a party who fails to comply with the disclosure requirements of Rule 26(a) or the supplementation requirement of Rule 26(e) 'is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Id.* (quoting Fed. R. Civ. P. 37(c)(1)). The party facing sanctions for failing to make the required disclosures under Rule 26(a) and (e) bears the burden of demonstrating that the failure was substantially justified or harmless under the five-factor test outlined in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003). *See Wilkins*, 751 F.3d at 222.

Here, the court begins by concluding that DirecTV's reference to "witnesses identified by DirecTV in *Arnold*" in its September 29, 2016 supplemental disclosure and in its initial disclosure, which presumably contained the same reference, is not sufficient to identify Hill for purposes of Rule 26(a)(1)(A)(i). *See* 6 James Wm. Moore, *Moore's Federal Practice* § 26.22[4][a][i] (3d ed. 2016) ("The parties must provide the specific names of the individuals they might use as witnesses. It is not sufficient to identify them through the use of a collective description . . . ."). Rule 26(a) requires initial disclosure of the identity of only those individuals who have information that the disclosing party, at the time of the initial disclosure, may intend to use. *See id.* § 26.22[4][a][ii] ("Each party must disclose identifying information only for those persons the party anticipates it will use to support its claims or defenses. Rule 26(a)(1)(A) no longer requires parties to provide identifying information for persons whom it does not intend to use during the proceeding . . . ." (footnote omitted)). Here, the court finds that, at the time set for making initial disclosures in this case, DirecTV knew of Hill's declaration because Hill had executed it nearly three months before the deadline for serving initial disclosures and because DirecTV had used it to support a nearly identical § 207(i) argument in *Arnold* just over a month after that deadline passed. It is clear that "[s]ubmitting an affidavit from an individual on a motion would constitute 'use' of that individual's information," *id.*, and, therefore, the court finds that DirecTV not only knew of Hill's declaration prior to the deadline for serving initial disclosures but also anticipated using the information contained in the declaration before that deadline. Further, even if DirecTV had not intended to use Hill's declaration in this case at the time initial disclosures were due, DirecTV at some point thereafter must have intended to use it to support the instant summary judgment motions, but it has failed even until now to supplement its Rule 26(a) disclosures to include Hill's identity in accordance with Rule 26(e). DirecTV's only potential excuse for failing to supplement

its disclosures might be that the information in Hill's affidavit was otherwise made known to Plaintiffs. *See* Fed. R. Civ. P. 26(e)(1)(A). However, DirecTV has presented no evidence or argument from which the court might conclude that this information was made known to Plaintiffs, *see id.* (specifying that "the additional or corrective information" must be "otherwise be[] made known *to the other parties*" and "*during the discovery process or in writing*" (emphasis added)), even though it appears that it is DirecTV's burden to do so, *cf. Poitra v. Sch. Dist. No. 1*, 311 F.R.D. 659, 667-68 (D. Colo. 2015) (explaining that courts should not presume that a reference to an individual equates to Rule 26(a)(1)(A)(i) disclosure and that the "otherwise made known" language of Rule 26(e)(1)(A) should be applied narrowly to avoid giving parties license to sandbag each other and to supplement disclosures "almost by happenstance"); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1169 (D. Colo. 2015) (explaining that "merely pointing to places in the discovery where the information was mentioned in passing is not sufficient"); *Bush v. Gulf Coast Elec. Coop.*, No. 5:13-cv-369-RS-GRJ, 2015 WL 3422336, at *4 (N.D. Fla. May 27, 2015) (explaining that a party's presenting evidence that individual's name was mentioned during a deposition "is insufficient to demonstrate that the information was made known to the other party"). The court concludes that, pursuant to Rule 26(a)(1)(A)(i) and (e)(1)(A), DirecTV had an obligation to provide Plaintiffs with Hill's identity in its initial disclosures and in its supplemental disclosures and that DirecTV failed to provide the requisite information.[7]

Because DirecTV failed to make disclosures required in Rule 26(a) and (e), it is subject to the sanctions laid out in Rule 37(c)(1), unless it meets its burden to show that its failure was

---

[7] Faced with the same circumstances, the court in *Roeder*, summarily rejected the plaintiff-technicians' argument that DirecTV's had failed to identify Hill as a witness in its initial disclosures. *See Roeder*, 2017 WL 151401, at *27. On this point, *Roeder* is not persuasive, as the decision is devoid of any analysis under Rules 26(a) and 37(c). *See id.*

substantially justified or harmless. *See Wilkins*, 751 F.3d at 222. DirecTV has presented no evidence or argument to demonstrate that its failure to disclose was substantially justified or harmless under the *Southern States* five-factor test and therefore has failed to meet its burden. Accordingly, the court agrees with Plaintiffs that DirecTV should not be allowed to use the Hill declaration to supply evidence in favor of application of the § 207(i) exemption in its motions for summary judgment. *See* Fed. R. Civ. P. 37(c)(1).

In the absence of the Hill declaration, DirecTV has pointed to no evidence in the record to support a finding that DirecTV is an establishment with at least 75% of its annual dollar volume of goods or services being recognized within its industry as retail sales or service. *See Matrai*, 168 F. Supp. 3d at 1359. DirecTV attempts to overcome this deficiency by pointing to cases in which courts have found that the services at issue in this case are recognized as retail sales or services within the industry. (*See* ECF No. 131 at 33-34 (citing *Roeder*, 2017 WL 151401, at *23-26; *Matrai*, 168 F. Supp. 3d at 1362; *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 440-41 (N.D.N.Y. 2014); *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, No. 5:10-cv-18, 2011 WL 4433159, at *2-7 (D. Vt. 2011)).) DirecTV suggests that this court could rely on these other courts' findings on this issue, even though the evidence on which these courts based their decisions is not in the record before this court, to conclude that there is no genuine dispute that the services at issue are recognized as retail sales or services within the industry. (*See id.* (citing *Johnson*, 4 F. Supp. 3d at 440-41).)

The court does not agree with DirecTV's suggestion. Although the rules of evidence permit the court to take judicial notice of adjudicative facts, *see* Fed. R. Evid. 201, including the actions of other courts and documents filed in the records of other courts, *see South Carolina v. United States*, No. 1:16-cv-00391-JMC, 2017 WL 976298, at *6 (D.S.C. March 14, 2017) (citing *United*

*States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016); *Muller-Paisner v. TIAA*, 289 F. App'x 461, 466 n.5 (2d Cir. 2008)); 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 201.12(3) (2d ed. 2011), "records of other courts generally may be noticed only to establish the fact of the litigation and actions of that court," 1 Weinstein & Berger, *supra*, § 201.12(3). Thus, documents in other courts' records, "may not be judicially noticed for the truth of the matters stated in them." 1 Weinstein & Berger, *supra*, § 201.12(3). Perhaps counterintuitively, this principle applies equally to documents filed by parties as to orders filed by the court: judicial findings of fact placed in a court order may not be judicially noticed to the extent the findings of fact are sought to be noticed for their truth. *See* 21B Kenneth W. Graham, Jr. *Federal Practice and Procedure* § 5106.4 (2d ed. 2009); 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 201.02[3] (9th ed. 2006); 1 Weinstein & Berger, *supra*, § 201.12(3). This is so because judicial findings of fact are not indisputable as that term is understood in the context of judicial notice and because, if the rule were otherwise, the doctrines of *res judicata* and collateral estoppel would be decadently superfluous. *See* 21B Graham, *supra*, § 5106.4; 1 Saltzburg, *supra*, § 201.02[3]; *see also Rogers v. Deane*, 594 F. App'x 768, 770-71 (4th Cir. 2014) (declining to supplement the record on appeal with order entered by state adjudicative board in part because, "[a]lthough the filing by the [b]oard of an order . . . is indisputable, the factual findings contained therein are not"); *United States v. Zayyad*, 741 F.3d 452, 464 (4th Cir. 2014) ("'Facts adjudicated in a prior case' . . . 'do not meet either test of indisputability contained in Rule 201(b).'" (alteration omitted) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))). Here, although DirecTV does not employ the language of judicial notice, it essentially suggests that the court should judicially notice the decisions in which courts have found that the services at issue are recognized as retail sales or

services in the applicable industry and to do so for the truth of those findings. The court concludes that it has no authority to do so for the reasons stated by the authorities cited in this paragraph. To the extent DirecTV relies on *Johnson* to suggest that the court has authority to take such judicial notice, the court finds *Johnson* unpersuasive, as it provided no explanation for taking judicial notice of other courts' findings for their truth. *See Johnson*, 4 F. Supp. 3d at 440-41.

In sum, the only evidence on which DirecTV relies to demonstrate that the services Plaintiffs performed is recognized as retail sales or services—the Hall declaration and the findings of facts by other courts—are not appropriate for the court to consider. In moving for summary judgment, a movant, such a DirecTV, bearing the ultimate burden of proof on an issue, also bears the initial burden of coming forward with evidence or otherwise demonstrating that there is no genuine dispute as to every element necessary to prevail on the issue, even in the absence of evidence or argument by the non-movant. *See Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (4th Cir. 1994); *Zipit Wireless Inc. v. Blackberry Ltd.*, No. 6:13-cv-02959-JMC, 2016 WL 5933975, at *6 (D.S.C. Oct. 12, 2016); *see also Semcon Tech, LLC v. Micron Tech., Inc.*, 660 F. App'x 908, 914 (Fed. Cir. 2016) (collecting cases). Because the court concludes that it should not consider the only evidence on which DirecTV relied on this issue, DirecTV never makes it off the starting block, and the court would deny its motions seeking summary judgment on the basis of the § 207(i) exemption for this reason alone.

Second, even assuming that the court considered the Hall declaration, Plaintiffs argue that Defendants have "only proffered evidence on the alleged retail nature of Plaintiffs' work . . . at an enterprise-wide level" rather than at the establishment-level to which the § 207(i) exemption applies. (ECF No. 125 at 91; *see id.* at 93.) The court agrees. As concisely stated by another court:

> For the purposes of both the § 7(i) and § 13(a)(2) exemptions, Congress chose to use the individual establishment, rather than the entire enterprise, as

the business unit for evaluating the applicability of the exemption. An "establishment" is a distinct, physical place of business, while an "enterprise" is the largest unit of corporate organization and "includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units." Thus, the relevant inquiry is not whether [a defendant]'s nationwide network of service specialists is an appropriate establishment. Rather, the [c]ourt must determine whether [the plaintiffs] were employed by a qualifying establishment at the local or regional level.

*English v. Ecolab, Inc.*, No. 06 Civ. 5672(PAC), 2008 WL 878456, at *9 (S.D.N.Y. March 31, 2008) (internal citations omitted) (quoting 29 U.S.C. § 203(r)(1), (s)) (citing, *inter alia*, 29 C.F.R. §§ 779.23, 779.303); *see also Hill v. Del. N. Cos. Sportservice, Inc.*, Nos. 11-CV-00753(S)(M); 14-CV-00138(S)(M), 2014 WL 10748103, at *2-4 (W.D.N.Y. July 28, 2014) (distinguishing between enterprise and establishment in context of "amusement or recreational establishment" exemption under 29 U.S.C. § 213(a)(3)); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 456-60 (S.D.N.Y. 2014) (same). Here, the only evidence to which DirecTV points to prove that it employs Plaintiffs in a retail or service establishment—the Hill and Kirby declarations—refers to the volume of goods and services sold by DirecTV as a whole and makes no mention of the volume of goods and services sold by any subpart thereof. (*See* ECF No. 101-2 at 3; ECF No. 101-3 at 2.) Yet, DirecTV fails to point to any evidence to support the conclusion that DirecTV as a whole is the relevant establishment, rather than an enterprise, for purposes of the § 207(i) exemption. In fact, even after Plaintiffs raised the issue in their response, DirecTV failed to address it at all in its reply. In the court's view, DirecTV's failure to provide any evidence or argument to support a conclusion that DirecTV as a whole is an establishment for purposes of § 207(i), when DirecTV relies solely on evidence that DirecTV as a whole engages in retail sales and services, precludes summary judgment in its favor on the basis of the § 207(i) exemption. *See Semcon Tech, LLC*, 660 F. App'x at 914; *Lindsey*, 16 F.3d at 618; *Zipit Wireless Inc.*, 2016 WL 5933975, at *6. Thus, the

court would deny DirecTV's motions seeking summary judgment on the basis of the § 207(i) exemption for this independent reason.

Third, again assuming that the court considered the Hall declaration, Plaintiffs argue that they have raised a genuine dispute as to whether the services they provided are recognized as retail within the industry. (*See* ECF No. 125 at 91-92.) Plaintiffs first correctly note that the question whether a particular service is recognized as retail may be determined by reference to industry usage but that industry usage is not dispositive. (*Id.* (citing *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 204-05).) They then explain that, although the Hill's sworn declaration is evidence that the industry views the services Plaintiffs provide as retail, Plaintiffs have provided the sworn testimony of other individuals within the industry—John Clarke and Daniel Yannantuono, officers with two of DirecTV's HSPs—who stated (drawing reasonable inferences from the testimony in Plaintiffs' favor) that the services are not viewed as retail. (*See id.* at 35-36 & nn.147-48, 92 (citing ECF No. 125-14 at 2; ECF No. 125-15 at 3-4).) Plaintiffs contend that contradictory evidence as to whether the industry views the relevant service as retail requires denial of the motions for summary judgment to the extent they are based on the § 207(i) exemption. (*See id.* at 92.) DirecTV's reply does not address this argument.

The court agrees with Plaintiffs. It is clear that sworn testimony from individuals in the industry is relevant to determining whether the service at issue is recognized as retail within the industry, *see Idaho Sheet Metal Works, Inc.*, 383 U.S. at 204-05; *Shultz v. Nalle Clinic*, 444 F.2d 17, 19-20 (4th Cir. 1971), a point implicitly conceded by DirecTV, as it pointed to the Hill declaration for this very purpose. The parties have presented sworn testimony from individuals within the industry, and the testimony conflicts on whether the services Plaintiffs provide is considered retail within the industry. Thus, the evidence boils down to a classic swearing contest,

for which the court, in the summary judgment arena, cannot declare a winner. *See United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 643 (7th Cir. 2015); *Jackson v. West*, 787 F.3d 1345, 1357 n.6 (11th Cir. 2015); *Watson v. Brown*, 446 F. App'x 643, 645 (4th Cir. 2011). For this independent reason as well, the court would deny DirecTV's motions for summary judgment to the extent they are grounded on the § 207(i) exemption.[8]

In sum, the court agrees with the three arguments Plaintiffs raise in opposition to DirecTV's motions seeking summary judgment based on the § 207(i) exemption, as there remain genuine

---

[8] The *Arnold* and *Roeder* courts faced the same swearing contest in deciding motions filed by DirecTV seeking summary judgment on the basis of the § 207(i) exemption. *See Arnold*, 2017 WL 1196428, at *7-9; *Roeder*, 2017 WL 151401, at *26-29. Both courts concluded that Yannantuono's and Clarke's testimony, when going up against Hill's testimony, was insufficient to raise a genuine dispute as to whether the plaintiff technicians' services are recognized within the industry as retail because Yannantuono and Clarke testified only as to whether their HSPs were recognized as retail businesses instead of whether DirecTV was recognized as a retail business. *See Arnold*, 2017 WL 1196428, at *9; *Roeder*, 2017 WL 151401, at *29. This court finds the decisions in *Arnold* and *Roeder* unpersuasive. First, the regulatory test does not ask whether the relevant establishment is recognized as a retail business but whether a sufficient quantum of the establishment's sales of goods or services is recognized as retail sales of goods or services. *See Schultz*, 428 F.2d at 187 n.3; *Matrai*, 168 F. Supp. 3d at 1359; 29 C.F.R. § 779.411. The focus, then, is on the service Plaintiffs provided, and because Plaintiffs provided the service both for the HSPs and for DirecTV, it is largely irrelevant that Yannantuono and Clarke testified as to the industry's view of HSPs rather than of DirecTV. Second, the *Arnold* and *Roeder* decisions fail to provide the non-movants, the plaintiff-technicians, the benefit of a reasonable inference. In this court's view, a reasonable inference to be drawn from Yannantuono's and Clarke's testimony that HSPs are not considered retail businesses is that HSPs' technicians are not considered to be engaging in retail work. Finally, the court notes that it appears that, under the standard imposed by the *Arnold* and *Roeder* courts, DirecTV was required to prove the § 207(i) exemption's applicability by preponderance, *see Arnold*, 2017 WL 1196428, at *7; *Roeder*, 2017 WL 151401, at *26, whereas, under the law of the Fourth Circuit, DirecTV must prove the application of the exemption by clear and convincing evidence, *see Calderon*, 809 F.3d at 121; *Desmond I*, 564 F.3d at 691 n.3; *Schmidt*, 2015 WL 3767436, at *5; *Herrera*, 18 F. Supp. 3d at 741-42. A higher evidentiary standard placed on the party moving for summary judgment should ease the burden on the non-movant to come forward with evidence demonstrating that specific, material facts exist which give rise to a genuine dispute. *See Anderson*, 477 U.S. at 254-55 ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. . . . [T]he clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions . . . ."). For these reasons, the court concludes that the testimony to which Plaintiffs point is sufficient to raise a genuine dispute.

issues of fact regarding the exemption's application. Accordingly, the motions are **DENIED** in this respect.

### D. Payment of at least minimum wage

Defendants argue that, with the exception of Plaintiff Watkins, Defendants are entitled to summary judgment on all of Plaintiffs' minimum wage claims because, assuming they were Defendants' employees, there is no genuine dispute that Plaintiffs were paid in excess of the minimum wage rate for each of the hours they worked. (*See* ECF No. 87-1 at 28; ECF No. 88-1 at 26-27; ECF No. 89-1 at 24-25; ECF No. 90-1 at 26; ECF No. 91-1 at 26; ECF No. 92-1 at 27; ECF No. 93-1 at 26; ECF No. 94-1 at 28; ECF No. 95-1 at 23; ECF No. 96-1 at 29; ECF No. 97-1 at 27-28; ECF No. 98-1 at 33; ECF No. 100-1 at 29-30.) Defendants point to Plaintiffs' supplemental Fed. R. Civ. P. 26(a)(1)(C) computation of damages and note the average hours each Plaintiff estimates that he worked per workweek and the average amount each Plaintiff approximates that he was paid each workweek. (*See, e.g.*, ECF No. 87-1 at 28 (citing ECF No. 103-3 at 17-19[9]).) Using these figures, Defendants calculate each Plaintiff's regular rate of pay by taking each Plaintiff's approximate average weekly pay and dividing it by the estimated average number of weekly hours worked. (*See, e.g.*, *id.* at 26-28.) Because, for each Plaintiff, the resulting rate is above the minimum wage rate of $7.25 per hour, Defendants argue they are entitled to summary judgment on Plaintiffs' claims that Defendants paid Plaintiffs below the minimum wage rate. (*See, e.g.*, *id.* (citing 29 U.S.C. § 206).)[10]

---

[9] Actually, Defendants incorrectly cite Exhibit 26 (ECF No. 103-2) rather than Exhibit 27 (ECF No. 103-3).

[10] For five Plaintiffs that worked for MasTec, Defendants also note that MasTec provided a wage adjustment intended to ensure these Plaintiffs were paid at least at minimum wage rate should their weekly rate ever fall below the minimum wage rate. (*See* ECF No. 89-1 at 24-25; ECF No. 95-1 at 23; ECF No. 96-1 at 29; ECF No. 98-1 at 33; ECF No. 100-1 at 29-30.) Evidence of the

In response, Plaintiffs argue first that Defendants are not permitted to rely on Plaintiffs' estimates of average hours worked and average pay received per week to support their summary judgment motions, as the rule permitting such estimations is intended to inure to the benefit of FLSA plaintiff-employees in proving the amount of damages after an FLSA violation has been proved and should not inure to the benefit of defendant-employers in seeking to disprove the violation. (*See* ECF No. 125 at 97 (citing *Mt. Clemens*, 328 U.S. at 688).) Second, Plaintiffs argue that the average weekly pay that they have approximated does not take into account chargebacks later deducted from their pay and expenses they incurred for supplies that were necessary to perform their work and for which Defendants did not reimburse them. (*See id.* at 96-97 (citing ECF Nos. 125-30, 125-32, 125-36, 125-38, 125-40, 125-42, 125-44, 125-46, 125-48, 125-50, 125-52, 125-54, 125-56, 125-59).) Because, Plaintiffs argue, the approximated weekly pay amounts should be reduced to reflect these unreimbursed expenses, the weekly regular rates of pay that Defendants calculated are inflated and thus fail to show beyond genuine dispute that Plaintiffs were paid at least at the minimum wage rate. (*See* ECF No. 125 at 97.) Defendants' reply is not responsive to these arguments. (*See* ECF No. 131 at 36-37, 41.)

Regarding Plaintiffs' first argument, the Supreme Court in *Mt. Clemens* set forth a burden-shifting framework that allows employees suing under the FLSA to prove damages when "the

---

adjustment, Defendants suggest, further supports their argument that they are entitled to summary judgment on these Plaintiffs' minimum wage claims.

Defendants point out that one of these five Plaintiffs testified at his deposition that he had received a wage adjustment (*see* ECF No. 89-1 at 24-25 (citing ECF No. 101-16 at 77-78)) and, for this reason, argue that this Plaintiff "admits that he does not allege to being owed a minimum wage" (*id.* at 24.) Although this Plaintiff's admission that he received the adjustment might support Defendants' argument for summary judgment in that it is evidence that he was paid at least the minimum wage rate, the court views Defendants argument—that, because Plaintiff admitted to receiving the adjustment, he makes no allegation that Defendants failed to pay him at least the minimum wage rate—contrived and wrong.

employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes." 328 U.S. at 687. In that situation, an employee may meet his burden

> if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88. The Supreme Court further explained that this

> rule applies only to situations where the fact of damage is itself uncertain . . . [and] assum[es] that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer.

*Id.* at 688. Based on this language, a number of courts have concluded that the *Mt. Clemens* burden-shifting framework only provides an evidentiary leg-up to plaintiff-employees at the damages stage in order to prove the amount of damages and that its relaxed burden simply does not apply at the liability stage to prove the existence of damages, i.e., that the plaintiff-employee performed work for which he was not properly compensated. *See, e.g.*, *Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602-03 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, ___ U.S. ___, 136 S. Ct. 663 (2016); *Still v. Costco Wholesale Corp.*, 298 F.R.D. 611, 629 (S.D. Cal. 2014).

Although it is clear that a plaintiff may not take advantage of the *Mt. Clemens* burden-shifting framework in proving Defendants' FLSA liability, it is not at all clear that this limitation supports Plaintiffs' argument here. The court perceives nothing in the case law stating that, because the lower evidentiary burden applies only at the damages phase, any *evidence* that might be used to meet that lower burden at the damages phase cannot also be used at the liability phase. Likewise,

the court has not located case law stating that, because the lower evidentiary burden is intended to benefit plaintiffs who have proven liability, evidence that might be used to meet the lower burden cannot also be used by *defendants* to defeat liability. Accordingly, the court declines to make any rulings on this basis in this order. The parties remain free to make further arguments on this issue.

Regarding Plaintiffs' second argument, Plaintiffs are correct that, unless an exception applies, "[a]n employee's wages must be 'free and clear, and an employer violates the FLSA where kickbacks 'directly or indirectly to the employer or to another person for the employer's benefit' reduce the employee's compensation below the minimum wage." *Moodie v. Kiawah Island Inn Co., LLC*, 124 F. Supp. 3d 711, 717 (D.S.C. 2015) (quoting 29 C.F.R. § 531.35). Likewise, "where an employer requires an employee to provide his own tools of the trade . . . 'there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA].'" *Herold v. Benevis*, No. 3:14-cv-771-JAG, 2016 WL 7177600, at *2 (E.D. Va. Jan. 8, 2016); *see also Montgomery v. Lovin' Oven Catering Suffolk, Inc.*, No. 4:15-cv-03214-RBH, 2016 WL7375031, at *4 n.5 (D.S.C. Dec. 20, 2016) ("[R]equiring an employee [to] incur[] costs of providing his own tools of the trade . . . may result in an employee making less than the minimum wage.") Thus, if un-excepted chargebacks were deducted from Plaintiffs' pay and un-excepted expenses were incurred, they operate to reduce the wages Plaintiffs received and thereby reduce Plaintiffs' regular rate of pay. Defendants have not asserted in their motions that the chargebacks and expenses Plaintiffs incurred should not count against their wages for purposes of determining the regular rate of pay or that these chargebacks and expenses were later reimbursed by Defendants. Accordingly, the court concludes that there remains a genuine dispute of fact regarding whether Plaintiffs' estimated average pay on which Defendants' calculations rely should be employed

without any deduction in order to determine Plaintiffs' regular rate of pay. The court agrees with Plaintiffs that Defendants' failure to account for the chargebacks and expenses when calculating the regular rate of pay prevents the court from concluding that no genuine dispute of fact remains regarding this particular defense. Accordingly, to the extent Defendants seek summary judgment on the minimum wage claims on this ground, the court concludes that the motions should be **DENIED** in this respect.

### E. Proof of damages

"An employee who brings suit . . . for unpaid minimum wages [and] unpaid overtime compensation . . . has the burden of proving that he performed work for which he was not properly compensated." *Mt. Clemens*, 328 U.S. at 686-87. However, "[t]he regulations implementing the FLSA mandate that the employer keep records of the 'hours worked each workday' by all employees." *Lee v. Vance Exec. Prot., Inc.*, 7 F. App'x 160, 165 (4th Cir. 2001) (argued but unpublished) (brackets omitted) (quoting 29 C.F.R. § 516.2(a)(7)). When an employer's records are inadequate or inaccurate, the Supreme Court has held that an employee meets his burden to prove the extent of his improperly compensated work by (1) "prov[ing] that he has in fact performed work for which he was improperly compensated," and (2) "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. If the employee carries this initial burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. If the employer cannot "produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

Defendants argue that they are entitled to summary judgment on all claims asserted by ten Plaintiffs on the ground that they have not adduced sufficient evidence to show the amount and extent of their improperly compensated work as a matter of just and reasonable inference. (*See* ECF No. 87-1 at 28-29; ECF No. 88-1 at 27-29; ECF No. 90-1 at 26-28; ECF No. 92-1 at 27-29; ECF No. 93-1 at 27-28; ECF No. 94-1 at 28-30; ECF No. 97-1 at 28-29; ECF No. 98-1 at 33-34; ECF No. 99-1 at 24-26; ECF No. 100-1 at 30-32.)[11] The court pauses here to note what Defendants do not assert. First, even though Defendants assert that MasTec, which employed Plaintiff Simon, "has robust policies and procedures to ensure that technicians record their time" and that MasTec "relied on Simon having recorded his working time when determining his compensation during his direct employment by MasTec," (ECF No. 98-1 at 34), Defendants do not assert that they, as putative employers, maintained adequate and accurate records of Simon's or any other Plaintiffs' hours so as to preclude application of the relaxed burden of proof imposed on FLSA plaintiffs by *Mt. Clemens.* Second, Defendants do not assert that they are entitled to summary judgment on the ground that, assuming Plaintiffs meet their initial burden, Defendants have come forward with evidence of the precise amount of work Plaintiffs performed so as to meet their burden to negative the reasonableness of the inference to be drawn from Plaintiffs' evidence. Instead, Defendants' entire argument under the *Mt. Clemens* burden-shifting framework is that Plaintiffs have failed to meet their initial burden to produce sufficient evidence to show the extent of their improperly compensated work as a matter of just and reasonable inference.

---

[11] Defendants do not seek summary judgment on this ground with respect to Plaintiffs Gleaton, Jenkins, Pegues, and Robinson. (*See* ECF No. 131 at 52.) With respect to Plaintiffs Bullock and Ryman, only DirecTV seeks summary judgment on this ground. (*See* ECF No. 88-1 at 27-29; ECF No. 97-1 at 28-29.)

In order to meet their initial burden, Plaintiffs point toward their own sworn testimony as to the number of hours they worked in each workweek. (*See* ECF No. 125 at 98.) Plaintiffs admit that the estimates of improperly compensated work that they provided in their testimony was not always precise or consistent, but they argue that precision and consistency are not required to meet their initial burden under *Mt. Clemens*. (*See id.* at 98-99 (citing ECF Nos. 125-30, 125-32, 125-36, 125-38, 125-40, 125-42, 125-44, 125-46, 125-48, 125-50, 125-52, 125-54, 125-56, 125-59).) Plaintiffs also argue that their estimations are corroborated by a sworn declaration submitted by their counsel, Crystal R. Cook, in which Cook, pursuant to Fed. R. Evid. 1006, summarizes voluminous spreadsheets reflecting information derived from SIEBEL. (*See id.* at 99 (citing ECF No. 125-12 at 2-6).) For each Plaintiff, the Cook declaration states the dates each Plaintiff worked, the number of workweeks worked, and the number of hours each Plaintiff was scheduled to work in each workweek. (*See* ECF No. 125-12 at 2-6.)

Defendants argue that each Plaintiff's deposition testimony as to the number of hours each of them works is inconsistent with or contradicts other of their sworn statements, such as the figures offered in their complaint or responses to interrogatories. (*See, e.g.*, ECF No. 87-1 at 28-29; *see* ECF No. 131 at 30-32.) Defendants contend that an FLSA plaintiff's sworn testimony as to the number of improperly compensated hours worked is insufficient under the *Mt. Clemens* framework if the testimony is internally inconsistent or if it is conclusory, speculative, or lacks substantiation. (*See, e.g.*, ECF No. 87-1 at 29; *see* ECF No. 131 at 30-31.) With respect to the Cook declaration, Defendants argue that it is incompetent evidence and that the court should not consider it (1) because the summarization contained therein amounts to hearsay, (2) because it is the sworn testimony of Plaintiffs' counsel who may not act as a witness in these proceedings, and (3) because

SIEBEL is not intended to manage or record technicians' schedules. (*See* ECF No. 131 at 31, 37 n.21.)

With respect to the sufficiency of Plaintiffs' testimony, the court begins by noting that, generally, in this court, an FLSA plaintiff's estimations offered in sworn statements as to the amount of improperly compensated work is, alone, sufficient to meet his initial burden under the *Mt. Clemens* framework, even if the estimation is imprecise. *See Perez v. Sanchez*, No. 6:14-cv-4326-BHH, 2016 WL 721032, at *2 (D.S.C. Feb. 24, 2016); *Degidio v. Crazy Horse Saloon & Rest., Inc.*, No. 4:13-cv-02136-BHH, 2015 WL 5834280, at *15 (D.S.C. Sept. 30, 2015); *McGregor v. Farmers Ins. Exch.*, No. 2:10-cv-03088-DCN, 2014 WL 4199140, at *3-4 (D.S.C. Aug. 20, 2014). This appears to be true of other district courts in the circuit, *see Etienne v. Ameri Benz Auto Serv. LLC*, No. PWG-14-2800, 2016 WL 1222569, at *6 (D. Md. March 29, 2016) ("'A prima facie case can be made through an employee's testimony giving his recollection of hours worked.'" (internal quotation marks omitted) (quoting *Hurd v. NDL, Inc.*, No. CCB-11-1944, 2012 WL 642425, at *4 (D. Md. Feb. 27, 2012)); *Cougill v. Prospect Mortg., LLC*, No. 1:13cv1433 (JCC/TRJ) , 2014 WL 348539, at *4 (E.D. Va. Jan. 31, 2014); *Smith v. Bonds*, No. 91-818 CIV-5-D, 1993 WL 556781, at *4 (E.D.N.C. Sept. 28, 1993), and the Fourth Circuit itself has suggested approval of this approach, *see Witz v. Durham Sandwich Co.*, 367 F.2d 810, 812 (4th Cir. 1966) (affirming damages award in favor of plaintiff when extent of damages were based solely on plaintiff's testimony). Here, Plaintiffs rely on their answers to interrogatories in which Plaintiffs set forth the estimated number of workweeks and estimated number of hours within each workweek that each of them recollects. (*See, e.g.*, ECF No. 125-30.) These are estimations offered in sworn statements that, though perhaps not unerringly accurate, are of the type that have been

considered sufficient in the Fourth Circuit to show the extent of their improperly compensated work as a matter of just and reasonable inference.[12]

Moreover, the court does not agree with Defendants that inconsistency or even contradiction in Plaintiffs' sworn statements requires summary judgment in Defendants' favor. Even assuming that the only evidence Plaintiffs proffered to meet their initial burden was inconsistent or contradictory sworn statements, rejecting this evidence's sufficiency based only on its reputed inconsistent or contradictory nature essentially would require the court to make credibility determinations. At the summary judgment stage, however, the court is not permitted to decide credibility, and, thus, the court concludes that Plaintiffs' sworn statements, inconsistent or

---

[12] The out-of-circuit authorities Defendants cite for the contrary proposition are distinguishable to some extent. For instance, in *Holaway v. Stratasys, Inc.*, 771 F.3d 1057 (8th Cir. 2014), the Eighth Circuit affirmed a grant of summary judgment to the employer when the employee "failed to put forward *any evidence* of the amount and extent of his work" and, "instead, put forth contradictory and bare *assertions* of his . . . hours worked." 771 F.3d at 1059 (emphasis added). Here, however, Plaintiffs have pointed to evidence as to the amount and extent of their work in the form of, among other things, their answers to interrogatories. *See Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 635 (7th Cir. 1996) ("Answers to interrogatories are evidence. . . . [T]hey [a]re admissions by a party opponent. Attorneys must anticipate that such an answer might find its way to the jury."); *see generally* 27 C.J.S. *Discovery* § 95 (2017). Defendants also cite several decisions in which district courts have determined that an FLSA plaintiff's sworn testimony that he sometimes worked unspecified amounts of time that were improperly compensated during some workweeks is, alone, not enough to meet the plaintiff's initial burden under *Mt. Clemens*. (*See, e.g.*, ECF No. 87-1 at 29 (citing *DiSantis v. Morgan Props. Payroll Servs., Inc.*, No. 09-6153, 2010 WL 3606267, at *13-14 (E.D. Pa. Sept. 16, 2010); *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 118-19 (S.D.N.Y. 2009); *Millington v. Morrow Cnty. Bd. of Comm'rs*, No. 2:06-cv-347, 2007 WL 2908817, at *7 (S.D. Ohio Oct. 4, 2007)).) Here, however, Plaintiffs' evidence as to the amount of time they worked is not so vague.

In any event, to the extent the authorities Defendants cite stand for the proposition that in order to meet the initial burden imposed on an FLSA plaintiff by *Mt. Clemens*, the plaintiff's sworn statement (a) must be so specific as to rise above the level needed for reasonable estimation or (b) must be accompanied by other substantiating evidence, this court does not agree. The former proposition cannot be squared with the type of judgment expressly contemplated by the *Mt. Clemens* Court. *See* 328 U.S. at 688 (explaining that, under the burden-shifting framework a "court may . . . award damages to the employee, even though the result be only approximate"). The latter proposition cannot be squared with the practice of district courts in the Fourth Circuit, which permit sworn statements alone to satisfy the initial burden, a practice with which this court agrees.

contradictory though they may be, are sufficient to raise a genuine dispute as to whether Plaintiffs have met their initial burden. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 364-65 (2d Cir. 2011); *Juarez v. Wheels Pizza Inc.*, No. 13cv261(DLC), 2015 WL 3971732, at \*3-4 (S.D.N.Y. June 30, 2015) (citing *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2004)), *Paguay v. Buona Fortuna, Inc.*, No. 11 Civ. 6266(LTS), 2013 WL 3941088, at \* 4 (S.D.N.Y. July 31, 2013) (citing *Gunawan v. Sake Sushi Rest.*, No. 09 cv 5018(ALC), 2011 WL 3841420, at \*4 (E.D.N.C. Aug. 26, 2011)); *Zirintusa v. Whitaker*, 674 F. Supp. 2d 1, 6 (D.D.C. 2009); *Laboy v. Alex Displays, Inc.*, No. 02 C 8721, 2003 WL 21209854, at \*2 (N.D. Ill. May 21, 2003); *Bowe v. SMC Elec. Prods., Inc.*, 916 F. Supp. 1066, 1072-73 (D. Colo. 1996).

Because the court concludes that, even if Defendants are correct that the Cook declaration should be disregarded, Plaintiffs have nonetheless provided sufficient evidence to raise a genuine dispute as to whether they have met their initial burden to show the extent of their improperly compensated work as a matter of just and reasonable inference, the court need not decide in this order whether the Cook declaration should be considered. Accordingly, to the extent Defendants seek summary judgment on the ground that Plaintiffs have failed to meet their initial burden under *Mt. Clemens*, their motions are **DENIED** in this respect.

### F. Statute of limitations

"[T]he length of the FLSA's statute of limitations depends upon whether the violation at issue was willful." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 131 (4th Cir. 2015) (citing 29 U.S.C. § 255(a); *Perez v. Mountaire Farms, Inc.,* 650 F.3d 350, 375 (4th Cir. 2011)). "If it is not willful, the limitations period is two years, but the period is three years for willful violations." *Id.* (citing 29 U.S.C. § 255(a); *Desmond v. PNGI Charles Town Gaming, LLC,* 630 F.3d 351, 357 (4th Cir. 2011) ("*Desmond II*")). "'Only those employers who either knew or showed reckless disregard

for the matter of whether its conduct was prohibited by the FLSA have willfully violated the statute,' [a]nd[] negligence is insufficient to establish willfulness." *Id.* (internal citation and brackets omitted) (quoting *Desmond II*, 630 F.3d at 358). "The question of whether an employer acted willfully is generally a question of fact," *id.* (citing *Martin v. Deiriggi*, 985 F.2d 129, 136 (4th Cir. 1993)), and, in the context of the FLSA, "there is no reason that the issue of 'willfulness' should be treated any differently from other factual determinations relating to application of a statute of limitations that are routinely submitted to the jury." *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 163 (4th Cir. 1992). "The burden to establish willfulness rests with the employee." *Calderon*, 89 F.3d 131 (citing *Perez*, 650 F.3d at 375).

Defendants argue that portions of the FLSA claims asserted by ten Plaintiffs are barred by the statute of limitations because Plaintiffs have failed to raise a genuine dispute that the two-year limitations period, rather than the three-year period, applies as they failed to adduce sufficient evidence showing that Defendants knew of or recklessly disregarded the FLSA violations at issue. (*See* ECF No. 87-1 at 30-31; ECF No. 88-1 at 29-30; ECF No. 91-1 at 27-28; ECF No. 93-1 at 29-30; ECF No. 94-1 at 30-31; ECF No. 95-1 at 23-24; ECF No. 96-1 at 29-31; ECF No. 97-1 at 21-22; ECF No. 99-1 at 26-27; ECF No. 100-1 at 32-33.)[13] Defendants point out that the agreements signed between DirecTV and its HSPs required the HSPs to comply with federal wage and hours laws and that the agreements signed between MasTec and its subcontracted HSPs require the subcontractor to do so as well. (*See, e.g.*, ECF No. 87-1 at 30.) They also argue that they lacked any knowledge of each Plaintiff's hours worked or compensation, which precludes a factfinder

---

[13] Defendants do not seek summary judgment on this ground with respect to Plaintiffs Gleaton, Hilton, Kile, or Simon. (*See* ECF No. 131 at 52.) Only DirecTV seeks summary judgment on this ground with respect to Plaintiffs Bullok and Ryman (*see* ECF No. 88-1 at 29-30; ECF No. 97-1 at 21-22), and only MasTec seeks summary judgment on this ground with respect to Plaintiffs Pegues and Watkins (*see* ECF No. 95-1 at 23-24; ECF No. 99-1 at 26-27).

determining that Defendants knew Plaintiffs were not being compensated in accordance with the FLSA. (*See, e.g.*, *id.* at 31.)

In response, Plaintiffs do not dispute that part of their claims would be barred if the two-year limitations period applies; instead, Plaintiffs argue that they have raised a genuine dispute as to whether the three-year limitations period applies because they have presented sufficient evidence that Defendants' FLSA violations were willful. (*See* ECF No. 125 at 99-101.) Plaintiffs first contend that, in DirecTV's agreements with its HSPs, DirecTV did not require the HSPs to comply with the FLSA, rendering Defendants' argument in this regard meritless. (*See id.* at 99-100.) Plaintiffs next contend that they have presented evidence demonstrating that Defendants' business structure (i.e., DirecTV's use of HSPs and HSPs' use of subcontractors) was intended to avoid the FLSA's compensation requirements while maintaining control of technicians in a way that DirecTV knew or should have known brought it within the ambit of the FLSA and that this amounts to evidence of willful violations. (*See id.* at 100.) Plaintiffs lastly argue that DirecTV had notice of potential FLSA violations due to the history of litigation, investigation, and settlements over allegations of FLSA violations involving technicians, which means DirecTV knew or should have known of the FLSA violations at issue here. (*See id.* at 101.)

In their reply, Defendants first note that Plaintiffs' response does not assert that MasTec had knowledge of or reckless disregard for the violations at issue and, thus, that Plaintiffs have waived any argument opposing summary judgment on this ground with respect to claims brought against MasTec. (*See* ECF No. 131 at 38 n.24, 39.) They next argue that DirecTV's business structure has previously been found to be a valid one and that, thus, any argument that, by engaging in it, DirecTV is recklessly disregarding its FLSA obligations is meritless. (*See id.* at 39.) Defendants lastly argue that DirecTV's history of litigating the issue should not be viewed as

evidence of its knowingly or recklessly violating FLSA requirements because, in much of the litigation over business structures like that used by DirecTV, federal courts have approved of them. (*See id.*)

Although there is much in these arguments the court might address here, the court declines to do so until after the hearing on the summary judgment motions.

**G. Overtime claims by MasTec employees**

Under the FLSA, unless an exception applies, an employer may not employ an employee for more than 40 hours per workweek unless the employee is compensated for the time in excess of 40 hours "at a rate not less than one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The "'regular rate' . . . include[s] all remuneration for employment paid to, or on behalf of, the employee," except for certain enumerated payments not at issue here. 29 U.S.C. § 207(e). "The keystone of Section [207(a)] is the regular rate of compensation," and using the correct method of calculating the regular rate is "of prime importance." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). Although the FLSA itself does not provide a method of calculating the regular rate, the Supreme Court has stated that "the regular rate refers to the hourly rate actually paid the employee for the normal non-overtime workweek for which he is employed." *Id.* More specifically, "[i]n the case of piece work wages, this regular rate coincides with the hourly rate actually received for all hours worked during the particular workweek, such rate being the quotient of the amount received during the week divided by the number of hours worked." *Id.*

The Department of Labor has offered guidance by providing, in accordance with *Walling*, methods for calculating the regular rate and the overtime wage obligations for particular kinds of piece-work or piece-rate employment. The method of calculation often varies according to the

manner in which the employer compensates an employee's nonproductive work hours. For instance, 29 C.F.R. § 778.111(a) provides a method of calculation for when an employee is paid a piece-rate for productive hours and a separate rate for nonproductive hours. In that situation, the regular rate is calculated by adding together the employee's total earnings for the productive hours and nonproductive hours (and any other applicable earnings) during the workweek and then dividing this sum "by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's 'regular rate' for that week." 29 C.F.R. § 778.111(a). The employee is entitled to an overtime premium, which is calculated by taking the number of hours worked in the workweek in excess of 40 and multiplying that number by half the regular rate. *Id.*[14]

The Department of Labor's guidance in 29 C.F.R. § 778.318 covers three piece-rate employment situations. Subsection (a) explains that when the parties "agree[] [to] provide payment only for the hours spent in productive work" and to "neither count[] nor compensate[]" for nonproductive work, "such an agreement will not comply with the [FLSA] [because] such nonproductive working hours must be counted and paid for." 29 C.F.R. § 778.318(a). Subsection (b) sets forth a method for calculating the regular rate and overtime obligations essentially the same as the method set forth § 778.111(a), and the method applies when "[t]he parties . . . agree

_____

[14] The guidance provides a helpful example:

> if the employee has worked 50 hours and has earned $491 at piece rates for 46 hours of productive work and in addition has been compensated at $8.00 an hour for 4 hours of waiting time, the total compensation, $523.00, must be divided by the total hours of work, 50, to arrive at the regular hourly rate of pay—$10.46. For the 10 hours of overtime the employee is entitled to additional compensation of $52.30 (10 hours at $5.23). For the week's work the employee is thus entitled to a total of $575.30 (which is equivalent to 40 hours at $10.46 plus 10 overtime hours at $15.69)

29 C.F.R. § 778.111(a).

to compensate nonproductive hours worked at a rate which is lower than the rate applicable to productive work." 29 C.F.R. § 778.318(b); *see also* 29 C.F.R. § 778.115 (describing weighted average calculation). Subsection (c) applies when "it is understood by the parties that the . . . compensation [for productive work or otherwise] received by the employee is intended to cover pay for [nonproductive work] hours." 29 C.F.R. § 778.318(c). The guidance for the situation at issue in subsection (c) is distinguished from the situation in subsection (a) because, although the parties agree that no special pay rate applies to nonproductive hours, the hours are properly counted and paid. *See id.* ("[W]hile it is not proper for an employer to agree with his pieceworkers that the hours spent in down-time (waiting for work) will not be paid for or will be neither paid for nor counted, it is permissible for the parties to agree that the pay the employees will earn at piece rates is intended to compensate them for all hours worked, the productive as well as the nonproductive hours."). If the parties agree to this method, then the regular rate is "determined by dividing the total piecework earnings by the total hours worked (both productive and nonproductive) in the workweek," and the additional overtime obligation is determined by taking the number of hours worked in the workweek in excess of 40 hours and multiplying that number by half the regular rate. *Id.*[15]

Defendants argue that they are entitled to summary judgment on the overtime wage claims asserted by Plaintiffs Gleaton, Naves, Pegues, Robinson, and Simon to the extent that these claims arise out of these Plaintiffs' employment with MasTec because, Defendants argue, there is no

---

[15] Another alternative method of calculating the regular rate and overtime obligation for piece rate employees is provided by 29 U.S.C. § 207(g), under which the Department of Labor has promulgated 29 C.F.R. § 778.418. *See* 29 C.F.R. § 778.111(a). This method is an optional one. *See Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1312 (11th Cir. 2007). Defendants assert that MasTec and the five Plaintiffs at issue did not opt to use this alternative method (*see, e.g.*, ECF No. 89-1 at 24 n.6), and Plaintiffs have not asserted otherwise. Accordingly, the court concludes that the § 207(g) method and the guidance promulgated thereunder are inapplicable here.

genuine dispute that MasTec correctly calculated and paid the overtime amount according to the principles described in the preceding paragraphs. (*See* ECF No. 89-1 at 21-24; ECF No. 95-1 at 20-22; ECF No. 96-1 at 21-24; ECF No. 98-1 at 30-32; ECF No. 100-1 at 26-29.) Defendants first argue that these five Plaintiffs claim only that they were not properly compensated for nonproductive hours that counted toward the hours worked in each workweek. (*See, e.g.*, ECF No. 89-1 at 21.) In other words, Defendants characterize Plaintiffs' claims to be not that certain nonproductive hours were never counted or paid but, instead, that, although their nonproductive hours were counted toward the workweek, they were not properly compensated for those nonproductive hours. Thus, in Defendants' view, the only issue is whether MasTec correctly employed a valid calculation method in determining Plaintiffs' regular rate of pay and overtime wages. (*See, e.g.*, *id.* at 21-22.) Defendants implicitly view the five Plaintiffs as being employed on a piece-rate basis. Citing to *Walling* and the Department of Labor guidance, Defendants assert that the correct method of calculating Plaintiffs' regular rate is to divide each Plaintiff's total earnings for each workweek by the total number of hours worked in that workweek and that the correct method of calculating Plaintiffs' overtime wages is to multiply the hours worked in excess of 40 hours in each workweek by half of the regular rate applicable to that workweek. (*See id.* at 22-23). Defendants assert that MasTec followed this method of calculation, pointing to examples of each of the five Plaintiffs' pay records. (*See* ECF No. 89-1 at 23-24 (citing ECF No. 121-10); ECF No. 95-1 at 21-22 (citing ECF No. 122-4); ECF No. 96-1 at 23 (citing ECF No. 122-6); ECF No. 98-1 at 32 (citing ECF No. 122-7); ECF No. 100-1 at 28-29 (citing ECF No. 122-1).) Because, Defendants assert, there is no genuine dispute that MasTec followed the correct method of calculating the regular rate and overtime wages for the five Plaintiffs' piece-rate employment, they

are entitled to summary judgment on these Plaintiffs' overtime claims arising from their employment with MasTec.

In response, Plaintiffs first point to evidence demonstrating that MasTec paid the five Plaintiffs piece-rate wages for productive hours but did not pay a special rate to them for certain nonproductive hours. (*See* ECF No. 125 at 101-02 (citing, *inter alia*, ECF No. 125-3 at 13-15); *see, e.g.*, *id.* at 46-47 (citing ECF No. 125-34 at 8; ECF No. 125-89 at 2-4, 6-7); *see also, e.g.*, ECF No. 121-10.) Plaintiffs then argue that piece-rate employment schemes that fail to count nonproductive work hours toward the total hours worked in a workweek and to compensate the employee for the nonproductive hours violate the FLSA (*see* ECF No. 125 at 101-02 (citing 29 C.F.R. § 778.318(a))), unless the parties agree that the employee will be compensated for the nonproductive hours (which must nonetheless be counted) through the piece-rate wages he receives (*see id.* at 102-03 (citing 29 C.F.R. § 778.318(c))). Plaintiffs assert that Defendants have put forward no evidence demonstrating that the parties agreed that the five Plaintiffs' compensation for productive time would also provide compensation for their nonproductive time and thus that there remains a genuine dispute as to whether the method of calculation under § 778.318(c) applies here. (*See id.* at 103.)

Replying to Plaintiffs' argument, Defendants admit that MasTec intended that the five Plaintiffs' piece-rate wage for productive hours would cover certain of Plaintiffs' nonproductive hours and that no special hourly rate was used to compensate for these hours. (*See* ECF No. 131 at 46.) However, Defendants assert that the five Plaintiffs were required by MasTec to record all nonproductive hours and that that they were expressly told that their piece-rate wages would compensate them for the nonproductive hours. (*Id.*) In support of these assertions, Defendants point to three pieces of evidence. (*Id.* at 46-47.) First, Defendants point to the MasTec Timesheet

Policies and Procedures memorandum (the "Memorandum") (ECF No. 136-3), which, among other things, lists a number of payroll codes technicians were to use to account for the type of work they performed or the type of paid leave taken (*see id.* at 3-4). With one exception, each payroll code states that the hours covered by the code "are to be paid at an established hourly rate" or "at the employee's hourly rate of pay." (*Id.* at 4.) The one payroll code that does not use this language instead states that hours paid pursuant to that code "are to be paid per the Tech Compensation rate sheet available from your supervisor or office supervisor." (*Id.*) Second, Defendants point to language in the MasTec AT Technician Compensation & Performance Guide (the "Guide") (ECF No. 136-5), which, Defendants assert, Plaintiffs Pegues, Robinson, and Simon acknowledged receiving (*see* ECF No. 131 at 46 (citing ECF No. 122-3 at 19; ECF No. 122-5 at 84; ECF No. 122-8 at 45)). The language in the Guide to which Defendants point emphasizes that MasTec's piece-rate employees "must **always** <u>accurately report all hours worked</u>" and states that "[p]iece-rate employees are paid for all hours worked." (ECF No. 136-5 at 3 (emphases in original).) Third, Defendants point to language in a Question and Answer form (the "Q&A form") (*see e.g.*, ECF No. 121-9 at 16), which, Defendants assert, Plaintiffs Gleaton, Naves, and Simon acknowledged receiving (*see* ECF No. 131 at 46-47 (citing ECF No. 121-9 at 16; ECF No. 122-2 at 26; ECF No. 122-8 at 23).) The language from the Q&A form on which Defendants rely states:

> Q: I am paid by the piece. How is my hourly rate calculated?

> A: You are paid by the "piece rate" method. Your hourly rate is calculated by adding your total earnings for the week, including bonuses and incentive payments, and dividing that total by the total number of hours you worked in that week. Under the "piece rate" method, you are paid one-half (50%) the regular rate of pay for all hours worked in excess of 40 in the week. This is no different than being paid time and one-half for overtime in a 40-hour job, since your hourly rate was calculated on all hours, including those hours over 40.

(ECF No. 121-9 at 16.)

The court agrees with Defendants that the five Plaintiffs at issue have not premised their overtime claims that arise from their employment with MasTec on the ground that they worked hours (either productive or nonproductive) that were not recorded or counted by MasTec but, instead, premise their claims on the ground that they were improperly compensated for hours that were in fact counted and recorded. Nothing in Plaintiffs' response to the summary judgment motions challenges this assertion made by Defendants, and Plaintiffs have pointed to no evidence suggesting that MasTec failed to count or record hours instead of failing to properly compensate for accurately counted and recorded hours. The court also agrees with Defendants that, assuming the method of calculating the regular rate and overtime wages for piece-rate employment in subsection (c) of § 778.318 applies here, then there is no genuine dispute that MasTec's method of calculation was in accordance with the method outlined in subsection (c) and with *Walling*.[16] A review of the pay records submitted by Defendants shows that MasTec took the employee's total piece-rate and other earnings for a workweek and divided it by the total number of hours worked in that workweek and then multiplied the number of hours worked in excess of 40 hours during the workweek by half of the resulting rate to produce an overtime premium, which was paid to the employee. For example, during the workweek comprising one half of a two-week pay period in January 2014 (designated "P1"), Plaintiff Gleaton's pay record shows that, excluding the overtime premium, he earned $530.00 and that he worked 56.67 hours. (*See* ECF No. 121-10 at 78.) Dividing the total earnings ($530.00) by the total hours worked in the workweek (56.67 hours) yields a regular rate of roughly $9.36 per hour. Multiplying half of the regular rate ($9.36) by the

---

[16] Plaintiff Gleaton asserts that MasTec sometimes miscalculated his overtime premium by multiplying the number of hours in a given workweek in excess of 40 by less than the required half of the regular rate for the applicable workweek. (*See* ECF No. 125 at 47, 103 n.274.) The court declines to address this assertion in this order.

number of hours worked in the workweek exceeding 40 (16.67) yields an overtime wage of roughly $78.02, which is the amount the pay record reflects MasTec paid to Gleaton as an overtime premium. (*See id.*) Plaintiffs have pointed to no evidence raising a genuine dispute that MasTec's calculation of overtime wages is in accordance with the method of calculation set forth in subsection (c).

The only issue remaining is whether there is a genuine dispute that MasTec was permitted to use the calculation method outlined in subsection (c) of § 778.318. The court concludes that there remains a genuine dispute on this issue. Although Defendants initially cited to § 778.111 as authority approving of its method of calculating the regular rate and overtime wages, the court concludes that § 778.318 provides better guidance because it more clearly accounts for the employment arrangement at issue here.[17] As Defendants themselves admit, the piece-rate wage MasTec paid the five Plaintiffs was intended to compensate them for nonproductive hours for which they received no special rate. (*See* ECF No. 131 at 45.) Accordingly, the method of calculation outlined in subsection (b) is inapplicable, as it requires that the parties agree to compensate the nonproductive work hours at issue at a separate, special rate. There is no dispute that certain of the five Plaintiffs' nonproductive work hours were not compensated by a special rate or that the parties did not agree to do so. Thus, the only legally acceptable employment arrangement MasTec could use is found in subsection (c). However, subsection (c) only applies if "it is understood by the parties that the . . . compensation [for productive hours or otherwise] received by the employee is intended to cover pay for [nonproductive] hours," as "it is permissible for the parties to agree that the pay the employees will earn at piece rates is intended to compensate

---

[17] In any event, as the court has already noted, the method of calculation outlined in § 778.111 appears to be the same as that outlined in § 778.318(b).

them for all hours worked, the productive as well as the nonproductive hours." 29 C.F.R. § 778.318(c). Thus, as a prerequisite for an employer to use the calculation method outlined in subsection (c), there must be an agreement between the employer and the employee to do so, or, at a minimum, the employee must have understood that the compensation for his productive hours would compensate him as well for his nonproductive hours. *See Hall*, 846 F.3d at 773 ("A piece-rate system is permissible under the FLSA *only where the parties agree* that all of an employee's hours, including nonproductive hours, are compensated and included in the employee's total working time and where the employer continues to comply with the statute's overtime provisions." (emphasis added) (citing 29 C.F.R. § 778.318)).[18] Where a genuine dispute remains regarding whether the parties agreed to subsection (c)'s calculation method or whether the employee understood that his nonproductive hours would be compensated by wages for productive hours, summary judgment should not be granted. *See Arnold*, 2017 WL 1196428, at *6; *Brasfield*, 2010 WL 3222495, at *4; *Colindres*, 427 F. Supp. 2d at 759.

---

[18] *See also Olivo v. Crawford Chevrolet, Inc.*, No. CV 10-782 BB/LFG, 2012 WL 12897385, at *4 (D.N.M. Jan. 12, 2012) ("Because there was no agreement, the exception to the rule that employees must be paid for the hours they are required to remain on the premises during non-productive wait time found at 29 C.F.R. 778.318(c) is not applicable here."); *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 WL 10069108, at *28 (D. Wis. April 11, 2011) ("[A]n employer is permitted to pay overtime to pieceworkers at half-time rates only if the employer and the employees reach an agreement that the piece-rate will compensate the employees for all hours worked, including nonproductive hours." (citing 29 C.F.R. § 778.318(c))); *Brasfield v. Source Broadband Servs., LLC*, No. 2:08-cv-02092-JPM-cgc, 2010 WL 3222495, at *3 (W.D. Tenn. Aug. 16, 2010) ("Under 29 C.F.R. § 778.318(c), overtime may be calculated at one-half the regular rate *if the employer and employee agree* that the piece-rate will compensate the employee for all hours worked, including nonproductive hours." (emphasis added)); *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737, 758 (S.D. Tex. 2006) ("Section 778.318(a) allows employers to not pay additional wages for nonproductive work if it is understood by the parties that the other compensation received by the employee is intended to cover pay for such hours." (internal quotation marks omitted)).

The court agrees with Plaintiffs that Defendants have not adduced evidence supporting their assertion that the five Plaintiffs agreed to an employment arrangement like that outlined in subsection (c) or understood that their nonproductive hours would be compensated by earnings they received for productive hours. The Memorandum to which Defendants point provides no evidence of Plaintiffs' agreement or understanding. As an initial matter, Defendants have failed to produce any evidence demonstrating that any of the five Plaintiffs received or reviewed the Memorandum, let alone that they understood or agreed to it. Further, even if they had received and reviewed it, the Memorandum does not disclose or even hint that certain nonproductive hours will be compensated by wages earned for productive hours. If anything, the ubiquitous statements in the Memorandum that, for nearly every payroll code, the employee will be paid at some unspecified hourly rate suggest quite the opposite. The lone payroll code stating that, for work under that code, the employee is paid according to a rate sheet that must be obtained elsewhere is wholly insufficient to support the existence of an agreement or understanding that employee's nonproductive work hours will be compensated by wages earned for productive work hours.

The Guide is likewise insufficient. It states that piece-rate employees will be paid for all hours worked, but fails entirely to disclose how such payment will be calculated. On its face, the Guide's emphasizing that employees must accurately report all hours worked coupled with its statement that all hours worked will be paid is more naturally understood to disclose that employees will receive wages for each hour worked (productive, nonproductive, or otherwise) and hardly suggests that certain work hours (nonproductive) will be compensated by wages paid for other work hours (productive). To the extent there is any ambiguity in the Guide's language, it

favors the five Plaintiffs, as all reasonable inferences must be drawn in their favor. *See Tolan*, 134 S. Ct. at 1863.[19]

The court also concludes that the Q&A form fails to support Defendants' assertion that the five Plaintiffs agreed to or understood the calculation method MasTec used. True, the Q&A form describes the basic calculus: dividing the workweek's earnings by its work hours, halving the resulting rate, and multiplying that half-rate by the number of hours in the workweek exceeding 40 to determine the overtime premium. But, crucially, it fails to state how the earnings are determined. Does each hour of work receive wages? Are wages for certain hours also applied to other hours, which receive no separate wages of their own? These questions are not answered, yet they are necessary for an employee to agree to an employment arrangement in which nonproductive hours do not receive their own wages. In this regard, the court notes that the calculus set forth in the Q&A form would describe the method of calculation outlined in subsection (b) of § 778.318 as equally well (or poorly) as it would describe the method outlined in subsection (c). Thus, it can hardly be said that the Q&A form demonstrates the five Plaintiffs' agreement or understanding that they would be subject to a calculation method outlined in subsection (c). Further, to the extent one could read the Q&A form as consistent with the method in subsection (c), one could just as easily read it as consistent with the method outlined in subsection (b). Therefore, the proper inference to be drawn is that the Q&A form does not disclose that MasTec would use the method outlined in subsection (c) and, thus, cannot support the assertion that the

---

[19] It has not escaped the court's notice that, although Defendants offer evidence that Plaintiffs Pegues, Robinson, and Simon received the Guide, there is no evidence that Plaintiffs Gleaton and Naves did.

five Plaintiffs agreed or understood that subsection (c)'s method would be used. *See Tolan*, 134 S. Ct. at 1863.[20]

Because there remains a genuine dispute as to whether subsection (c)'s method of calculating the five Plaintiffs' regular rates and overtime wages should be applied, the court **DENIES** Defendants' motions to the extent they seek summary judgment as to the five Plaintiffs' overtime claims arising from their employment with MasTec on the ground that there is no genuine dispute that MasTec calculated and paid them proper overtime wages.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment (ECF Nos. 87 to 100) are **DENIED IN PART** to the extent set forth above in this order. At the upcoming hearing, the parties should shape their oral arguments accordingly.

**IT IS SO ORDERED**.

J. Michelle Childs

United States District Court Judge

May 26, 2017
Columbia, South Carolina

---

[20] Again, the court notes that, although Defendants offer evidence that Plaintiffs Gleaton, Naves, and Simon received the Q&A form, there is no evidence that Plaintiffs Pegues and Robinson did.